**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RYOAUKE KONDO, SANTOS ACOSTA, KRISTOPHER FARLEY, EDWARD DEL VECHHIO, JORGE CIFUENTES, CELINA LI, AND HANNA PAGE, individually and on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br><br>CREATIVE SERVICES, INC.,<br><br>     Defendant. | Civil Action No. 1:22-cv-10438-DJC<br>Honorable Judge Denise J. Casper |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

III.  SUMMARY OF THE SETTLEMENT .............................................................. 4

   A.   DEFINITION OF THE CLASS ................................................................. 4

   B.   THE SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS ............................... 5

      1.   Settlement Fund ............................................................................ 5

      2.   Identity Theft Protection and Credit Monitoring Package ........................... 5

      3.   Cash Payments ............................................................................ 5

      4.   Remedial Measures and Security Enhancements ........................................ 6

      5.   Notice, Claims Process, and Settlement Administration ............................... 6

      6.   Attorneys' Fees, Expenses, and Service Awards ....................................... 7

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL ............... 7

   A.   STANDARDS FOR PRELIMINARY APPROVAL ........................................... 7

   B.   THE RULE 23(E) FACTORS ARE SATISFIED ........................................... 9

      1.   Rule 23(e)(2)(A) – Class Representatives and Class Counsel Adequately Represented the Class. ................................................................. 9

      2.   Rule 23(e)(2)(A) – The Settlement was Negotiated at Arm's-Length. ............ 10

      3.   Rule 23(e)(2)(C) – The Relief Provided is Adequate. ............................. 11

         a.   Rule 23(e)(2)(C)(i) – Costs, Risks, and Delay of Trial and Appeal ........ 11

         b.   Rule 23(e)(2)(C)(ii) – Effectiveness of the Proposed Method of Distributing Relief…… ........................................................... 13

    c.    Rule 23(e)(2)(c)(iii) – Attorney's Fees ............................................ 14

    d.    Rule 23(e)(2)(c)(iv) – Agreements Required to be Identified under Rule 23(e)(3) . 14

    4.    Rule 23(e)(2)(D) - Class Members Are Treated Equitably ......................................... 14

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED .................................................... 15

    A.    THE RULE 23(A) FACTORS ARE MET. ......................................................................... 15

    1.    The Class Is Sufficiently Numerous ................................................................. 15

    2.    Questions of Law or Fact are Common to the Class ..................................... 16

    3.    Plaintiffs' Claims Are Typical ......................................................................... 16

    4.    Plaintiffs Will Fairly and Adequately Protect the Class ............................... 16

    B.    THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3) ................................................. 17

    1.    Common Questions Predominate ...................................................................... 17

    2.    The Class Is the Superior Method of Adjudication ....................................... 18

VI.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED .............................. 19

VII.    CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
  568 U.S. 455 (2013)................................................................................................ 17

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985)................................................................................... 17

*Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
  404 F. Supp. 3d 486 (D. Mass. 2018) ..................................................................... 9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...................................................................................... 8

*Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................. 17

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................................ 19

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
  285 F.R.D. 169 (D. Mass. 2012) ............................................................................ 16

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019).................... 11, 15

*Greenspun v. Bogan*,
  492 F.2d 375 (1st Cir. 1974)................................................................................... 20

*Hill v. State Street Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) .............................................................. 20

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*,
  723 F.2d 169 (1st Cir. 1983)..................................................................................... 7

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ............................................................ 17

*In re Brinker Data Incident Litig.*,
  No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .......... 16

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003)................................................................................... 8

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ..................... 11

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008) ........................................................................ 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................... 8

*In re Lupron Mktg. and Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .................................................................... 7, 11

*In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10981-PBS,
    2014 WL 5810625 (D. Mass. Nov. 10, 2014) ................................................. 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ............................................................................... 9

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    No. 3:15-MD- 2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) ............... 12

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    No. 19-MD-02878-NMG, 2022 WL 4329646 (D. Mass. Sept. 19, 2022) .......... 9

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) .............................................................. 8, 9, 15

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ....... 12, 18

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
    538 F. Supp. 3d 208 (D. Mass. 2021) ............................................................ 8, 9

*Koenig v. Lime Crime, Inc.*,
    No. CV 16-503 PSG (JEMx), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ........ 11

*Mazola v. May Dep't Stores Co.*,
    No. 97 Civ. 10872, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) .................. 14

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................ 19

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
    No. 3:15-CV-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ......... 10

*Roberts v. TJX Companies, Inc.*,
    No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........... 8

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ......................................................................... 11

iv

*S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
  241 F.R.D. 85 (D. Mass. 2007) ................................................................. 16

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003) ..................................................................... 18

*U.S. v. Comunidades Unidas Contra La Contaminacion,*
  204 F.3d 275 (1st Cir. 2000) ..................................................................... 7

## **Rules**

Fed. R. Civ. P. 23 ............................................................................... passim

## **Other Authorities**

*Manual for Complex Litigation*, Third, § 30.41 (1995) ................................. 8

Plaintiffs Ryosuke Kondo, Jorge Cifuentes, Daniel Durgin, Kristopher Farley, Edward Del Vecchio, Santos Acosta, Valerie Locke, Michael Mercurio, Celina Li, Hannah Page, Pasquale Russolillo, Lisa MacGillivray and Gary Shepis,[1] individually and on behalf of the putative class, submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (the "Motion").[2]

## I.    INTRODUCTION

In February 2022, defendant Creative Services, Inc. ("CSI" or "Defendant") announced its computer systems were affected by a cyberattack (the "Data Incident"), in which an unauthorized third-party may have accessed files containing the personally identifiable information ("PII") of 165,210 individuals, including their names, dates of birth, Social Security numbers, and/or driver's license numbers. Following a forensic investigation, CSI mailed notices to the 165,210 individuals whose PII was potentially impacted in the Data Incident. Individuals, including Plaintiffs, received formal notice of the Data Incident in or around February 2022.

After nearly a year of litigation and months of hard-fought negotiations, the Parties have agreed to a Settlement that provides substantial monetary and non-monetary benefits to the Settlement Class. Specifically, the Settlement provides monetary relief that will: (i) reimburse Out-

---

[1] This class action settlement also pertains to matters against Defendant not before this Court: *Russolillo, et al. v. Creative Services, Inc.,* Case No. 2284cv01059-BLS2, pending in the Superior Court of the Commonwealth of Massachusetts, Suffolk County (the "*Russolillo* Action"), and *Durgin, et al. v. Creative Services, Inc.,* Case No. 2273CV00180B, pending in the Superior Court of the Commonwealth of Massachusetts, Bristol County (the "*Durgin* Action"). Counsel in the state court actions and this federal court action worked in tandem to secure the favorable settlement for the Class. The Settling Parties include: Ryosuke Kondo, Jorge Cifuentes, Daniel Durgin, Kristopher Farley, Edward Del Vecchio, Santos Acosta, Valerie Locke, Michael Mercurio, Celina Li, Hannah Page, Pasquale Russolillo, Lisa MacGillivray and Gary Shepis. The Settling Parties will be collectively referred to as "Plaintiffs."

[2] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to this motion. Citations to the Settlement Agreement are abbreviated as "SA, ¶ ___ or SA, § ___."

of-Pocket Losses of up to $3,000 per Settlement Class Member who incurred expenses or losses as a result of the Data Incident; and (ii) reimburse each Settlement Class Member for up to four (4) hours of attested Lost Time spent dealing with the Data Incident at a rate of $25.00 an hour. SA, ¶ 2.7. In addition, all Settlement Class Members are eligible to receive two (2) years of three bureau credit monitoring and identity theft protection services, with identity-theft insurance. SA, ¶ 2.9. Finally, the Settlement provides additional relief in the form of meaningful enhancements to Defendant's cybersecurity as it relates to the Settlement Class Members' PII. SA, ¶ 2.12.

As detailed below, the Settlement falls within the range of possible final judicial approval and includes a comprehensive notice plan. CSI does not oppose the relief requested in the motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Creative Services is a "full-service employment screening and security consulting firm, serving corporate, nuclear, and government market sectors" who conducts background checks for employment and licensing purposes.[3]

In or around November 2021, an unauthorized third party gained unauthorized access to certain files on CSI's computer systems containing the PII of individuals who were the subject of Defendant's background checks.  As a result, the PII of over 165,000 individuals was potentially exposed, including their names, dates of birth, Social Security numbers, and/or driver's license numbers. During February 2022, CSI sent notice letters to potentially impacted individuals, including Plaintiffs and the Settlement Class.

Shortly after receiving notice of the Data Incident, several class action lawsuits were filed against CSI, each asserting claims connected to the Data Incident (collectively, "the Litigation"). [4]

---

[3] *See* https://www.creativeservices.com/about.

[4] On March 3, 2022, Daniel Durgin and Lisa MacGillivray filed a class action lawsuit in the Superior Court of the Commonwealth of Massachusetts, Bristol County (case no.

Counsel in the Litigation against CSI worked together to negotiate and secure a settlement on behalf of Plaintiffs and the Settlement Class. Specifically, Plaintiffs' counsel investigated the factual parameters of the Data Incident, researched claims and applicable law, coordinated informal case management of both the state and federal actions, organized partial consolidation of the cases in federal court (including filing a consolidated complaint), requested and reviewed informal discovery from CSI, and strategized on how to efficiently pursue the Litigation as a collective effort. Declaration of David K. Lietz ("Lietz Decl.") (filed contemporaneously herewith as Exhibit 2), ¶ 27.

Shortly after the Amended Class Action Complaint (ECF No. 19) was filed in this action, the Parties engaged in voluntary settlement discussions. After weeks of arm's-length negotiations between competent and experienced counsel, including the exchange of informal discovery, the Parties attended a full-day mediation session with JAMS mediator, Honorable Morton Denlow (Ret.). Lietz Decl., ¶ 29. Although significant progress was made during the mediation, the Parties were unable to reach a resolution. Following the conclusion of the mediation, Judge Denlow

---

2273CV00179A). Also on March 3, 2022, Jorge Cifuentes filed a class action lawsuit in the Superior Court of the Commonwealth of Massachusetts, Bristol County (case no. 2273CV00179A) (the "*Cifuentes* Action"). On March 11, 2022, Kristopher Farley and Edward Del Vecchio filed a class action lawsuit in the Superior Court of the Commonwealth of Massachusetts, Bristol County (case no. 2273CV00201B) (the "*Farley* Action). On March 14, 2022, Santos Acosta filed a class action in the Superior Court of the Commonwealth of Massachusetts, Bristol County (case no. 2273CV00208C) (the "*Acosta* Action"). On March 23, 2022, Valerie Locke and Michael Mercurio filed a class action lawsuit in the Superior Court of the Commonwealth of Massachusetts, Bristol County (case no. 2273CV00233A). On April 13, 2022, Celina Li and Hannah Page filed a class action lawsuit the Superior Court of the Commonwealth of Massachusetts, Bristol County (case no. 2273CV0000288B) (the "*Li* Action"). On May 13, 2022, Pasquale Russolillo and Gary Schepis filed a class action lawsuit in the Superior Court of the Commonwealth of Massachusetts, Suffolk County (case no. 2284cv01059-BLS2). On March 3, 2022, Ryosuke Kondo filed a class action lawsuit in the United States District Court for the District of Massachusetts (case no. 1:22-cv-10438) (the "*Kondo* Action"). The *Acosta* Action, *Farley* Action, *Cifuentes* Action, and *Li* Action, were dismissed and consolidated into the *Kondo* Action. *See* Amended Class Action Compl., ECF No. 19.

presented the Parties with a mediator's proposal for a settlement. Both Parties accepted Judge Denlow's settlement proposal, subject to executing formal settlement documents and the Court's approval. Subsequently, the Parties worked together to negotiate the specific settlement terms, which are memorialized in the Settlement Agreement. The Settlement Agreement provides for the resolution of all claims and causes of actions asserted, or that could have been asserted, against CSI relating to the Data Incident, by and on behalf of Plaintiffs and the Settlement Class.

Plaintiffs and their Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with CSI, that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members. Lietz Decl., ¶ 33.

## III.   SUMMARY OF THE SETTLEMENT

### A. Definition of the Class

The Parties contemplate certification, for settlement purposes only, of a nationwide class. The Settlement Class is comprised of 165,210 individuals. SA, § I. The proposed Settlement Class is defined as follows:

> [A]ll persons and entities that used CSI's services whose personally identifiable information ("PII") was potentially accessible to a third party in the cybersecurity incident involving Defendant CSI's computer system that occurred in November 2021.

SA, ¶ 1.27.

The Settlement Class specifically excludes: (i) CSI and its respective officers and directors; (ii) all members of the Settlement Class who timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge. SA, ¶ 1.27.

### B. The Settlement Terms and Benefits to the Settlement Class

#### 1. Settlement Fund

CSI will make available to the Settlement Class a generous non-reversionary Settlement Fund of $1,200,000.00. SA, ¶¶ 1.29, 2.2. The Settlement Fund will be used to pay for the following: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payments approved by the Court; (iv) Fee Award and Costs approved by the Court; (v) reimbursements for Out-of-Pocket Losses and Attested Time; and (vii) Credit Monitoring/ID Theft Protection Services. SA, ¶ 2.5. CSI will pay costs associated with the remedial security-related measures separate and apart from the Settlement Fund. SA, ¶ 2.12.

#### 2. Identity Theft Protection and Credit Monitoring Package

All Settlement Class Members who submit a Valid Claim Form are eligible to receive two (2) years of three bureau credit monitoring and identity theft protection services, with identity-theft insurance.  SA, ¶ 2.9.

#### 3. Cash Payments

In addition to the Identity Theft Protection and Credit Monitoring, the Settlement provides the following fair and reasonable cash payments to eligible Settlement Class Members:

Reimbursement of Out-Of-Pocket Losses: Settlement Class Members who claim they suffered Out-of-Pocket Losses incurred as a result of the Data Incident, including: (i) out of pocket expenses incurred as a result of the Data Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; (ii) fees for credit reports, credit monitoring, or other identity theft insurance product purchased after the November 26, 2021 Data Incident; and (iii) any other documented loss fairly traceable to the Data Incident and who can provide reasonable documentation for such expenses or losses, will be eligible for a payment of the

amount of loss up to three thousand dollars ($3,000). SA, ¶ 2.7. To receive this reimbursement, Settlement Class Members need only provide their name and current address, supporting documentation of such out-of-pocket expenses, and a description of the loss, if not readily apparent from the documentation. SA, ¶ 2.7.

Reimbursement for Lost Time: Settlement Class Members who spent time in response to the Data Incident will be eligible for reimbursement of up to four (4) hours of time spent at a rate of twenty-five dollars ($25.00) per hour (or $100.00 in total). SA, ¶ 2.7.  To receive this payment, a Settlement Class Member need *not* provide any supporting documentation, but only needs to attest that they spent the claimed time responding to issues raised by the Data Incident. SA, ¶ 2.7.

### 4. Remedial Measures and Security Enhancements

The Settlement also provides that Plaintiffs have received assurances that CSI has implemented or will implement certain reasonable steps to adequately secure its systems and environments on or before June 31, 2023. SA, ¶ 2.12. CSI will pay costs associated with these security-related measures separate and apart from the Settlement Fund. SA, ¶ 2.12. These remedial measures inure to the direct benefit of the Settlement Class, whose PII might remain in CSI's computer systems. The adoption of these remedial measures which CSI has implemented or will implement will substantially enhance the protection of the Settlement Class Members' PII stored by CSI.

### 5. Notice, Claims Process, and Settlement Administration

The Notice program was structured to apprise Settlement Class Members of the Settlement and their respective rights, in compliance with the requirements of Rule 23(e) and due process. The details of the Notice program are discussed in Section VI, *infra*.

### 6. Attorneys' Fees, Expenses, and Service Awards

CSI has agreed that Class Counsel may file a Fee Petition for an award of attorneys' fees and Litigation Costs and expenses to be paid from the Settlement Fund in the following amounts: (i) attorney's fees in an amount not to exceed thirty-three percent (33.00%) of the Settlement Fund (SA, ¶ 7.1); (ii) reimbursement of litigation costs and expenses not to exceed fifty thousand dollars ($50,000.00) (SA, ¶ 7.2); and Service Awards to Class Representatives in the amount of one-thousand five hundred dollars ($1,500.00) each (SA, ¶ 7.3), all subject to Court approval.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL

The Settlement is the result of vigorous litigation, the exchange of documents and other informal discovery, and extensive arm's length negotiations among the Parties with the assistance of experienced JAMS mediator, Hon. Morton Denlow (Ret.). SA, § I; Lietz Decl., ¶ 29. The Settlement provides valuable benefits and monetary compensation to Class Members as well as favorable changes to Defendant's data security measures. The Settlement compares favorably to previous data breach settlements when weighed against the risks associated with continued litigation.  Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Plaintiffs' Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Lietz Decl., ¶ 52.

### A. Standards for Preliminary Approval

As a matter of public policy, settlement is a highly favored means of resolving disputes. *U.S. v. Comunidades Unidas Contra La Contaminacion,* 204 F.3d 275, 280 (1st Cir. 2000); *Hotel Holiday Inn de Isla Verde v. N.L.R.B.,* 723 F.2d 169, 173 (1st Cir. 1983) (settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits."). This policy is especially applicable to complex class action litigation. *See, e.g., In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law

favors class action settlements."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.,* 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e). However, at the preliminary approval stage the Court need only make an initial fairness evaluation that the Settlement is "within the range of possible approval." *Manual for Complex Litigation*, Third, § 30.41 (1995). "If so, the final decision on approval is made after the [final] hearing." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005).

Federal Rule of Civil Procedure 23(e)(2), sets forth the following factors the court must consider in determining if the class action settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212–13 (D. Mass. 2021).[5]

---

[5] Note, prior to the 2018 amendment to the Federal Rules of Civil Procedure district courts in the First Circuit considered a variety of factors to determine if a class action settlement was fair, adequate, and reasonable. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003), judgment entered, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003) ("[T]he appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration."); *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (applying the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (The *Grinnell* factors are "(1) the complexity, expense

As explained below, the proposed settlement is well within the range of reasonableness and meets the criteria identified by Rule 23(e).

**B. The Rule 23(e) Factors Are Satisfied**

    **1. Rule 23(e)(2)(A) – Class Representatives and Class Counsel Adequately Represented the Class**

The first factor the Court considers when reviewing a class action settlement is the adequacy of Class Counsel and the class representatives. Proposed Class Counsel satisfy their duty to provide adequate representation by prosecuting the case "competently and vigorously…without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009). On the other hand, class representatives must, at a minimum, have: (1) "the ability and incentive to represents the interests of the class vigorously," (2) "obtained adequate counsel," and (3) no "conflict between [his or her] claims and those asserted on behalf of the class." *Jean-Pierre*, 538 F. Supp. 3d at 212 (citing *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 508 (D. Mass. 2018).

---

and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72 (recognizing there is "no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement" and noting courts have used both the *Compact Disc* factors and *Grinnell* factors.); *but see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-MD-02878-NMG, 2022 WL 4329646, at *2 (D. Mass. Sept. 19, 2022) (noting both the Rule 23(e) factors and the *Grinnell* factors after the 2018 amendment to the Federal Rules of Civil Procedure). Plaintiffs only address those factors enumerated in Rule 23(e) in the interest of brevity.

Proposed Class Counsel are highly experienced class action litigators who have, and will continue to, vigorously prosecute the interests of the Class Members.  *See* Lietz Decl., ¶¶ 2-18 and Exhibit A (attached thereto).  Indeed, proposed Class Counsel have vigorously litigated the Action to date, including: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a numerous detailed complaints; (ii) gathering Plaintiffs' documents and relevant information; (iii) requesting and reviewing relevant informal discovery; (iv) participating in extensive settlement discussions; and (v) achieving a very favorable Settlement on behalf of the Settlement Class.  Lietz Decl., ¶ 12. Additionally, Class Counsel have no conflicts of interest with the Class. Thus, there is no reason to doubt proposed Class Counsel's adequacy.

Not only have Proposed Class Counsel adequately represented the Class, but so have Plaintiffs as class representatives. Here, the proposed Class Representatives do not have antagonistic or competing interests with unnamed members of the Class. The named Plaintiffs and the Class Members share the identical objectives of establishing liability and obtaining damages. There are no conflicts between the Class representatives and the Settlement Class, meaning the representatives provide adequate representation of the Class as a whole.

Based on the foregoing, this factor supports preliminary approval of the settlement.

## 2.  Rule 23(e)(2)(A) – The Settlement was Negotiated at Arm's-Length

The next factor examines the negotiation process. "A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (citation omitted).

The Settlement here is the product of extensive arm's-length negotiations conducted by experienced counsel and a well-respected mediator, all of whom are knowledgeable in complex consumer class actions, especially data breach class actions. Lietz Decl., ¶¶ 2-18. The Settlement

reflects the progress of months of negotiations, the preparation and review of detailed mediation statements and other pre-mediation materials, and the review of relevant informal discovery. Lietz Decl., ¶¶ 12, 27. The Parties were only able to reach the Settlement after a full-day mediation session with the Honorable Morton Denlow (Ret.) who has considerable experience mediating data breach class settlements. Lietz Decl., ¶ 29. During the mediation and in the subsequent discussions, the Parties engaged in aggressive negotiations to reach agreement on the final terms of the Settlement. Lietz Decl., ¶ 31.

Class Counsel have considerable experience in handling consumer class actions, including data breach class actions, and are clearly capable of assessing the strengths and weaknesses of a case. *See* Lietz Decl., ¶¶ 2-18 and Exhibit A attached thereto. The experience of the attorneys involved demonstrate the Settlement Class Members were well-represented at the bargaining table. Indeed, it is Class Counsel's opinion that the relief provided to the Settlement Class is an exceptional result. Lietz Decl., ¶ 52. Accordingly, as this Court has held, "[w]hen the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). Thus, this factor tips in favor of preliminary approval of the settlement.

### 3. Rule 23(e)(2)(C) – The Relief Provided is Adequate

#### a. *Rule 23(e)(2)(C)(i) – Costs, Risks, and Delay of Trial and Appeal*

In the absence of a settlement, Plaintiffs would have faced "a significant element of risk." *In re Lupron*, 228 F.R.D. at 97. "Data breach" actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). "Beyond the novel state of the law in regards to identity

theft, there are inherent issues of causation" that would have resulted in protracted and uncertain litigation. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD- 2633-SI, 2019 WL 3410382, at *21 (D. Or. July 29, 2019) (granting preliminary approval, recognizing "Plaintiffs have a weaker case with respect to damages . . . and the number of Class Members who appear to have suffered actual identity theft or out-of-pocket damages that can reasonably be attributed to the Data Breach appears to be relatively low.").

The $1,200,000.00 Settlement Fund and the categories of benefits achieved in this case represent a very favorable result for the Settlement Class Members. Those who submit a valid Claim Form have the opportunity to receive *all* of the following benefits, as applicable: cash reimbursement of Lost Time up to $100.00; reimbursement of Out-of-Pocket Losses up to $3,000.00; and credit monitoring and identity theft protection services for two (2) years. SA, ¶¶ 2.7, 2.9. These Settlement benefits compare very favorably to those of other data breach class action settlements that have been approved by other courts. *See, e.g., Sackin v. TransPerfect Global, Inc*., Case No. 1:17-cv-01469-LGS (Dec. 14, 2018) (ECF Nos. 63, 74) (approving settlement providing only 3 years of identity theft protection and reimbursement of out-of-pocket expenses); *In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, Case No. 1:17-cv-01035-WMR (N.D. Ga.) (ECF Nos. 187-1, 190) (approving settlement providing only reimbursements for out-of-

pocket losses and time spent); *In re Zappos Sec. Breach Litig.*, No. 12-cv-00325 (D. Nev.) (ECF No. 418 at 2) (settlement provided "10% coupon" for Zappos goods).

Moreover, the outstanding benefits made available under the Settlement would not be guaranteed if facing trial. Indeed, absent the instant Settlement, Plaintiffs would have had to survive numerous motions by Defendant, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the Class, over CSI's likely opposition. All while facing the rising costs of litigation. Instead, the Parties were able to craft a settlement providing substantial monetary benefits to the Settlement Class, while avoiding the expense and delay of continued litigation. Lietz Decl., ¶ 33. The Court's acceptance and approval of the Settlement Agreement is preferable in comparison to the continuation of lengthy and expensive litigation with uncertain results.

For the reasons discussed, this factor also weighs in favor of preliminary approval of the settlement.

### b. *Rule 23(e)(2)(C)(ii) – Effectiveness of the Proposed Method of Distributing Relief*

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims."

The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of an experienced and well-respected mediator. As set forth above, the Settlement makes available to *all* Settlement Class Members thirty (2) years of Identity Theft Protection and Credit Monitoring. SA, ¶ 2.9.  The Settlement also proposes two forms of monetary relief: (i) reimbursement for out-of-pocket expenses; and (ii) compensation for Lost Time. SA, ¶ 2.7. Finally, the Settlement provides for meaningful data security enhancements

to better protect the PII of the Settlement Class. SA, ¶ 2.12. All claims will be processed by the Settlement Administrator, with the oversight of Class Counsel. SA, ¶ 2.11.1.

The proposed settlement is effective for distributing relief and merits preliminary approval.

### c.    *Rule 23(e)(2)(c)(iii) – Attorney's Fees*

The proposed amount of attorney's fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees not to exceed thirty-three percent (33.00%) of the Settlement Fund ($396,000.00) and Litigation expenses not to exceed fifty thousand dollars ($50,000.00) SA, ¶ 7.2. This request is within the range of approvable. *See In re Neurontin Mktg. & Sales Practices Litig*., No. 04-cv-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."). While Plaintiff will fully brief their fee request by separate motion, the attorneys' fees, expenses, and service awards sought do not present a barrier to preliminary approval.

### d.    *Rule 23(e)(2)(c)(iv) – Agreements Required to be Identified under Rule 23(e)(3)*

Next, the Court should consider whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). There are no additional agreements. As such, this factor supports preliminary approval.

### 4.    Rule 23(e)(2)(D) - Class Members Are Treated Equitably

The final Rule 23(e)(2) inquiry is whether the Settlement Agreement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).

The proposed Settlement is a common fund settlement, without any preferential treatment of the named Plaintiffs or any segments of the Class. With this proposed Settlement, Settlement Class Members are able to recover damages for injuries caused by the Security Incident and may also receive credit monitoring services. *See* SA, ¶¶ 2.7, 2.8. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses and lost time allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also intend to apply for Service Awards for Plaintiffs. SA, ¶ 7.4. Courts have held that it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class action litigation. *See, e.g., Bray. v. GameStop Corp.*, No. 17-CV-01365, ECF No. 54 (D. Del. Dec. 19, 2018) ($3,750 per class representative); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415, ECF Nos. 128-29 (D. Colo. Dec. 16, 2019) ($2,500 per class representative); *Weiss v. Arby's Restaurant Grp. Inc.*, No. 17-cv-01035, ECF No. 190 (N.D. Ga. June 6, 2019 ($4,500 per class representative); *Torres v. Wendy's Int'l LLC*, No. 6:16-cv-00210, ECF No. 157 (M.D. Fla. Feb. 26, 2019) ($5,000 per class representative). A service award to the Representative Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not constitute preferential treatment. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). Thus, all of the Rule 23(e) factors supports preliminary approval.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.  The Rule 23(a) Factors Are Met

#### 1.  The Class Is Sufficiently Numerous

Numerosity is met if "the class is so numerous that joinder of all members is

impracticable[.]" Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied here because Defendant's records indicate that there are 165,210 Settlement Class Members. SA, § 1.

### 2.   Questions of Law or Fact are Common to the Class

Class certification requires there to be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is a low hurdle, and class members need not present factual or legal situations that are "precisely identical." *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007).

Here, there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendant had a duty to safeguard the Settlement Class Members' PII; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's systems. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class).

### 3.   Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied when the plaintiffs' "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff[s'] claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Here, each Plaintiff's and Settlement Class Member's claims and legal arguments arise out of the same series of events – the Data Incident, which exposed their PII.  Thus, typicality is satisfied.

### 4.   Plaintiffs Will Fairly and Adequately Protect the Class

Rule 23(a) also requires that the representative plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry has two components: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members,

and second, the counsel chosen by the class representative must be qualified, experienced, and able to vigorously conduct the proposed litigation." *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 179 (D. Mass. 2012).

The adequacy requirement is met here. Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (finding the adequacy requirement satisfied when "the interests of the representative party will not conflict with the interests of any of the class members"). Indeed, Plaintiffs and Class Members all share the same objectives, factual and legal positions, and interest in establishing Defendants' liability. Additionally, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail above. *See* Section IV(B)(1), *infra*; Lietz Decl., ¶¶ 2-18 and Exhibit A attached thereto. Accordingly, the adequacy requirement is met here.

## B. The Settlement Class Satisfies Rule 23(b)(3)

A class meets the certification requirements of Rule 23(b)(3) when it meets two criteria. First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3). Second, class treatment should be superior to other available methods for the fair and efficient adjudication of the controversy. *See id*.

### 1. Common Questions Predominate

Predominance requires that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

Here, as noted above, the common factual and legal questions presented include whether: (i) Defendant had a duty to safeguard the Settlement Class Members' PII; (ii) Defendant was negligent in maintaining adequate data security protocols; and (iii) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's

systems. These common issues predominate over individual ones. *See, e.g.*, *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040,, 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at \*2 (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

### 2.    The Class Is the Superior Method of Adjudication

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class.

Here, the proposed Settlement Class is comprised of over 165,000 individuals and, if each were to pursue their claims against CSI individually, they would each need to provide nearly the same, if not identical, legal and factual arguments and evidence. Allowing this case to move forward as a class action would: (i) avoid congesting a court with the need to repetitively adjudicate such actions; (ii) prevent the possibility of inconsistent results; and (iii) allow class members an opportunity for redress they might otherwise be denied.  Accordingly, this class settlement is the superior method for adjudicating the claims of the Class. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41-42 (1st Cir. 2003) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating" relatively small potential recoveries) (internal citations omitted).

## VI.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

In addition to approving the proposed Settlement, the Court should also approve the proposed means of notifying Settlement Class Members. Fed. R. Civ. P. 23(c)(2). Due process and Rule 23(e) do not require that each Class Member receive notice, but rather, that class notice be "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the Notice program is designed to reach as many Settlement Class Members as possible. First, no later than fourteen (14) days after entry of the Preliminary Approval Order, CSI will provide the Claims Administrator with the name, email address (if available), and last known physical address of each Settlement Class Member. SA, ¶ 3.2(a). Next, within thirty (30) days after the entry of the Preliminary Approval Order the Claims Administrator will provide the Short Notice to all class members via US mail, and to all Settlement Class Members for whom CSI is in possession of a valid postal address, the Claims Administrator will mail a reminder notice fourteen (14) days prior to the Claims Deadline. SA, ¶ 3.2(c). To all class members for whom CSI is in possession of a valid email address, the Claims Administrator will also send the Short Notice via email to those Settlement Class Members, regardless of whether notice has been sent to a postal mailing address as well. SA, ¶ 3.2(c).

The Settlement Administrator will also establish a Settlement Website that will allow Settlement Class Members to submit Claim Forms online and will allow them to view and download the Long Notice, the Preliminary Approval Order, the Settlement Agreement, and the operative

Amended Class Action Complaint (ECF No. 19). SA, ¶ 3.2(b). This is in addition to a toll-free help line that will also be made available to Settlement Class Members to provide them with additional information about the settlement. SA, ¶ 3.2(e).

Settlement Class Members who do not wish to participate in the settlement may opt-out of the settlement by mailing written notice to the Claims Administrator no later than forty-five (45) days after the Notice Commencement Date. SA, ¶ 4.1. Additionally, Settlement Class Members may object to the Settlement by submitting a valid written objection no later than forty-five (45) days from the Notice Commencement Date. SA, ¶ 5.1.

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form (Exhibit A to the Settlement Agreement), objecting, and/or appearing at the Final Approval Hearing.  *See* SA, at Exhibits B and C. Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances. *Hill v. State Street Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974) ("The Notice is clearly reasonable as it 'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'") (internal citations omitted).

## VII.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval and enter an order substantially similar to the proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement.

Dated: March 24, 2023

Respectfully submitted,

*s/ David K. Lietz*

David K. Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Douglas F. Hartman, BBO# 642823
**HARTMAN LAW, P.C**.
10 Post Office Square
Suite 800 South
Boston, Massachusetts 02109
T:  617-807-0091
F:  617-507-8334
dhartman@hartmanlawpc.com

*Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ David K. Lietz*